IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KENNETH W. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:14-cv-00779-MDH |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Plaintiff's appeal of the Commissioner's denial of his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381 et seq. Plaintiff has exhausted his administrative remedies and the matter is ripe for judicial review.[1] After carefully reviewing the files and records, the Court finds the ALJ's opinion at step five[2] is not supported by substantial evidence in the record as a whole and the Court **REVERSES** and **REMANDS** this case to the Commissioner for further proceedings consistent with this opinion.

## BACKGROUND

The procedural history, facts, and issues of this case are contained in the record and the parties' briefs, so they are not repeated here. To summarize, Plaintiff applied for SSI benefits at

---

[1] Plaintiff filed an application for SSI on July 20, 2011, alleging disability beginning on February 2, 2008. Plaintiff's claim was initially denied on October 4, 2011. Plaintiff filed a written request for a hearing on his claim and a hearing was held before an ALJ on February 1, 2013. The ALJ issued a decision on June 21, 2013 finding Plaintiff was not disabled. Plaintiff appealed the ALJ's decision and the Appeals Counsel denied Plaintiff's request for a review on August 8, 2014. Plaintiff commenced the present suit on September 4, 2014.

[2] The Social Security Administration has established a five-step process for determining whether an individual is disabled. 20 C.F.R. § 416.920(a). The five-step process considers whether: "(1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). If the ALJ determines at step three the claimant's impairments do not meet or equal one of the listed impairments, then the ALJ must assess the claimant's residual functional capacity ("RFC") to use at steps four and five. 20 C.F.R. § 416.920(e).

1

the age of 48, alleging disability due to impairments of cirrhosis, high blood pressure, thyroid problems, back problems, and depression. Plaintiff formerly worked as a seasonal groundskeeper, a temporary factory worker, and a temporary nursing home worker but he allegedly ceased working in 2003 due to his disabilities. Plaintiff's application for benefits was initially denied. Prior to Plaintiff's hearing, Plaintiff submitted additional evidence including a psychological evaluation that showed Plaintiff suffers from low intellectual functioning.[3]

At the hearing, the ALJ asked Plaintiff why he believed he was unable to work. Plaintiff responded: "I just get, I just don't feel good sometimes and one day I can have a good day and blood pressure, sometimes I just feel sick. I don't, my thyroid and all that, it just gets me down." Plaintiff testified that he takes medication for his thyroid, high blood pressure, and diabetes. When asked about the anxiety referenced in his medical records, Plaintiff stated he gets nervous in crowded rooms but testified that he has not seen anyone other than his primary care physician for anxiety, his primary care physician has never referred him to a mental health center for his anxiety, he has never been hospitalized for anxiety, and he is not currently taking medication for anxiety because his doctor has not prescribed any. When asked about schooling, Plaintiff testified that he attended special education classes from third grade through eleventh grade and then dropped out. Plaintiff explained that he is forgetful but can follow directions and remember how to accomplish tasks after being shown how to do them. He testified that, although he has lived with his parents for the past ten years following a divorce from his ex-wife, he needs no assistance in personal care tasks, he can do household chores such as dishes, vacuuming, laundry, and mowing the lawn, he shops for his own groceries, he can count change, and he can read simple instructions but has some trouble understanding the newspaper.

---

[3] Plaintiff underwent WAIS-IV testing and received a Full Scale IQ of 64. *See* Ex. 10F.

Following the hearing, Plaintiff submitted additional educational records and underwent a consultative examination ordered by the ALJ. After receiving and reviewing all of the evidence, the ALJ issued a written decision denying Plaintiff's claim. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of his application and that Plaintiff suffered from the severe impairment of lower intellectual quotient (IQ). The ALJ specifically discussed listings 12.02, 12.04, 12.05, 12.06, and 12.09 and determined that Plaintiff's impairments do not meet or medically equal a listing. Upon consideration of the entire record, the ALJ found that Plaintiff retained a residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitation:

> [Plaintiff] is limited to performing simple, routine, repetitive tasks. He must work in close proximity to a supervisor and do work that could be learned with a short demonstration of tasks. He cannot do work that requires a production rate pace. He can have no more than occasional interaction with co-workers and no interaction with the general public.

The ALJ determined that Plaintiff had no past relevant work but, based on his age, education, work experience, and residual functional capacity, Plaintiff could perform jobs that exist in significant numbers in the national economy, as identified by the vocational expert. The ALJ denied benefits and the Appeals Counsel denied Plaintiff's request for review.

## STANDARD

Judicial review of the Commissioner's decision is limited to an inquiry concerning whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires a court to

3

Case 4:14-cv-00779-MDH   Document 17   Filed 09/23/15   Page 3 of 13

consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

## DISCUSSION

Plaintiff alleges the ALJ erred in three respects: (1) the ALJ failed to sustain the Commissioner's burden at step five because the vocational expert's testimony was inconsistent with the DOT; (2) the ALJ's finding at step three is unsupported by substantial evidence in the record as a whole because Plaintiff meets the criteria for listing 12.05C; and (3) the ALJ's residual functional capacity is unsupported by substantial evidence in the record as a whole because the ALJ improperly weighed the medical opinions in the record. The Court will address each argument in the order of the sequential five-step process. Upon review, the Court finds the Commissioner failed to sustain its burden at step five and reversal and remand is required for further proceedings consistent with this opinion.

### 1. ALJ's step three finding is supported by substantial evidence in the record as a whole.

Plaintiff argues the ALJ erred at step three by finding Plaintiff's impairments did not meet or equal Listing 12.05C. Listing 12.05 provides presumptive disability for certain persons who are considered intellectually disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Intellectual disability, as used in Listing 12.05, means "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the

developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *Id.* An intellectual disability triggers presumed benefits under Listing 12.05 only where the above definition is satisfied and the claimant satisfies one of four scenarios. *Id.* One scenario is described in 12.05C and exists where the claimant has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" *Id.* at § 12.05C. "In sum, to meet Listing 12.05C, a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006).

Here, the ALJ discussed Listing 12.05C and found that, while Plaintiff received a valid IQ score between 60 and 70, Plaintiff did not meet the second and third criteria cited in *Maresh*. Plaintiff argues the ALJ erred because substantial evidence in the record as a whole supprots that Plaintiff did suffer deficits in adaptive functioning prior to age 22 and that Plaintiff did have other mental impairments imposing additional and significant work related limitations. The Court finds substantial evidence to support the ALJ's conclusion that Plaintiff did not suffer an additional impairment under Listing 12.05C. Because Plaintiff failed to satisfy the additional impairment criteria contained in 12.05C, the Court need not address Plaintiff's other arguments related to deficits in adaptive functioning prior to age 22. *See Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891, 107 L. Ed. 2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

5

The Eighth Circuit has interpreted the "additional impairment" requirement in Listing 12.05C to require the existence of an additional "severe" impairment as defined in 20 C.F.R. § 416.920(c). *Lott v. Colvin*, 772 F.3d 546, 549-50 (8th Cir. 2014) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A); *see generally Monroe v. Astrue*, 848 F. Supp. 2d 961, 979-83 (D. Minn. 2011) (discussing development of "other impairment" requirement). To establish a "severe" impairment under Section 416.920(c), the claimant must show that the "impairment or combination of impairments . . . *significantly limits* your physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c) (emphasis added). To determine whether any impairment(s) significantly limits one's ability to do basic work activities, the ALJ considers evidence from acceptable medical sources, other medical sources, educational personnel, public and private social welfare agency personnel, and other non-medical sources. *See* 20 C.F.R. § 416.913(d). The ALJ will make credibility determinations regarding the intensity and persistence of symptoms based on "all of the available evidence" in order to determine the extent to which those symptoms limit the claimant's capacity for work. 20 C.F.R. § 416.929(c)-(d).

Here, the ALJ found that Plaintiff's low IQ was his only severe impairment. Although the record indicates that Plaintiff was diagnosed with other mental impairments, as suggested by Plaintiff, including generalized anxiety disorder, agoraphobia, social phobia, and depressive disorder NOS, the ALJ found those mental impairments non-severe in light of the credible evidence in the record. The ALJ acknowledged that Plaintiff sometimes presented as anxious during his medical visits, that his primary care physician diagnosed Plaintiff with general anxiety disorder, and that Plaintiff suffers from mild difficulties in social functioning;[4] however, the ALJ

---

[4] The ALJ found Plaintiff had "mild difficulties" noting that Plaintiff testified he gets nervous in crowds but that he gets along well with his parents, visits family members, has a few friends that he sees on occasion, reportedly spends time sitting and talking to others, reportedly does not have problems getting along with friends, family, neighbors, or authority figures, and has he ever been laid off from a job due to problems getting along with others. Tr. 27.

6

cited other evidence in the record to find Plaintiff's anxiety disorder did not significantly limit his ability to do basic work activities – i.e. Plaintiff's brief and conservative treatment for anxiety, his failure to seek psychiatric treatment from a mental health provider, his failure to take prescribed anxiety medication, his failure to cite anxiety on his application or provide testimony that his was limited in his ability to work due to anxiety, and his reasons for leaving his prior job. Tr. 23-27.[5] The ALJ further noted that Plaintiff's general credibility was diminished based on inconsistencies in the record, Plaintiff's poor earnings record, his non-compliance with treatment recommendations, his reported daily activities that demonstrate the ability to perform a variety of work, and his own testimony that indicated Plaintiff's employment problems were due in large part to lack of transportation and history of drinking rather than his impairments. Tr. 31-33.

After consideration of the evidence in the record as a whole, the Court finds the ALJ's credibility determination is entitled to deference, *see Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014 )("Questions of credibility are for the ALJ in the first instance" and "[i]f an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment."), and the ALJ's finding that Plaintiff did not suffer an

---

[5] *See generally Clay v. Barnhart*, 417 F.3d 922, 929 (8th Cir. 2005) ("The absence of a record of treatment, diagnosis, or even inquiry into a mental impairment prior to applying for benefits weighs against finding there to be an impairment."); *Depover v. Barnhart*, 349 F.3d 563, 566 (8th Cir.2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged); *Weber v. Barnhart*, 348 F.3d 723, 725 (8th Cir.2003) (noting that claimant left her job due to lack of transportation, not due to disability); *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (upholding denial of benefits where claimant had worked with "cognitive abilities he currently possesses"); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) (noting "[i]f impairment can be controlled by medication, it cannot be considered disabling" and "[f]ailure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits"); *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (failure to seek medical treatment may be inconsistent with a finding of disability"); *Murphy v. Sullivan*, 953 F.2d 383, 386–87 (8th Cir. 1992).(a lack of evidence that the claimant attempted to find any low cost or no cost medical treatment for her alleged pain and disability is inconsistent with a claim of disabling pain).

7

additional severe impairment is within the available zone of choice. Accordingly, the ALJ did not err in concluding that Plaintiff failed to satisfy the criteria of Listing 12.05C.[6]

### 2. ALJ's RFC is supported by substantial evidence in the record as a whole.

Plaintiff argues the ALJ's RFC is unsupported by substantial evidence in the record as a whole because the ALJ improperly weighed the medical opinions of record. As an initial matter, the Court notes that RFC represents the most a claimant can still do despite his or her limitations, 20 C.F.R. § 416.945(a)(1), taking into account the limiting effects all of the claimant's impairment(s), including those that are not considered severe. *Id.* at 416.945(e). RFC is determined by the ALJ "based on all of the relevant medical and other evidence." *Id.* at § 416.945(a)(3); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In evaluating the weight to give medical opinion evidence, the ALJ considers the factors listed in 20 C.F.R. § 404.1527.

Here, Plaintiff disputes the weight afforded to the medical opinions of three non-treating physicians.[7] First, Dr. Aram, a licensed psychologist, acted as a state agency psychological consultant in September of 2011; he opined that Plaintiff's anxiety was non-severe and caused no limitations in Plaintiff's functioning. The ALJ gave Dr. Aram's opinion "great weight" because

---

[6] Plaintiff places significant reliance on the GAF scores assessed by Dr. Parks (GAF 45) and Dr. Chatain (GAF 50). GAF scores, however, are not conclusive evidence of the severity of a claimant's impairment(s), especially where GAF scores are infrequent and/or from a consultative examiner based solely on subjective reports of the claimant. *See Jones v. Astrue*, 619 F.3d 963, 973-74 (8th Cir. 2010) (quoting *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed.Appx. 411, 415 (6th Cir. 2006) ("Moreover, the Commissioner has declined to endorse the Global Assessment Functioning score for use in the Social Security and Supplemental Security Income disability programs, and has indicated that Global Assessment Functioning scores have no direct correlation to the severity requirements of the mental disorders listings."); *see, e.g., Wright v. Astrue,* 489 F. App'x 147, 149 (8th Cir. 2012) (unpublished) ("Given the ALJ's comprehensive analysis of the medical evidence, the infrequency of the GAF scores, the range of the GAF scores (40–59), Wright's conflicting activities, and the conflicting medical evidence relied upon by the ALJ, the ALJ's failure to reference Wright's GAF scores does not require reversal.").

[7] To the extent Plaintiff argues the ALJ erred in giving "little weight" to the opinion of Dr. Vitt – a consultative examiner who met with Plaintiff in connection with his application for Medicaid – the Court rejects such an argument. Dr. Vitt's opinion was rendered in the context of a Medicaid disability assessment that is not binding on the Commissioner, *see generally* 20 C.F.R. § 416.904, his opinion mainly discussed physical impairments, and his conclusions regarding psychological impairments were supported by hearsay only ("it has been relayed to our office from a family member that he suffers from severe anxiety disorder that precludes him from gainful employment").

8

Case 4:14-cv-00779-MDH   Document 17   Filed 09/23/15   Page 8 of 13

"Dr. Aram is familiar with agency definitions and evidentiary standards" and because [h]is opinions are consistent with the preponderance of the evidence[.]"

Second, Dr. Chatain, a licensed psychologist, conducted a consultative examination in December of 2012; she interviewed Plaintiff, administered intellectual testing, and diagnosed Plaintiff with low intellectual functioning as well as panic disorder with agoraphobia, social phobia, depressive disorder, and history of alcoholic abuse. Dr. Chatain opined that Plaintiff's "psychological functioning is impaired due to anxiety and depressive symptoms" citing Plaintiff's self-reported history of poor sleeping, sadness, isolation, interpersonal anxiety, panic attacks, etc. and recommending that Plaintiff "be referred to outpatient psychological treatment and his physician for a medication evaluation." The ALJ gave Dr. Chatain's opinion "little weight" finding that a diagnosis of severe anxiety was not documented by treating sources, was inconsistent with Plaintiff's testimony regarding his symptoms and limitations, and was inconsistent with Plaintiff's failure to take prescribed psychotropic medications. The ALJ further noted that Plaintiff "acknowledged at the hearing that while he still receives Medicaid benefits, he had not followed up on Dr. Chatain's recommendation for outpatient psychological treatment or medication evaluation."

Third, Plaintiff underwent a consultative examination with Dr. Parks, a licensed psychologist, after his hearing before the ALJ. Dr. Parks interviewed Plaintiff and submitted a disability psychological evaluation as well as a medical source statement on behalf of Plaintiff. Dr. Parks diagnosed Plaintiff with dysthymic disorder and generalized anxiety disorder and opined that Plaintiff "would struggle to interact socially and adapt to changes in his environment" and "would benefit from individual therapy focused on building self-esteem and coping with the anxiety he experiences." The ALJ gave Dr. Park's opinion "partial weight"

9

Case 4:14-cv-00779-MDH   Document 17   Filed 09/23/15   Page 9 of 13

noting that her opinion was generally inconsistent with the preponderance of the evidence that showed Plaintiff had only brief treatment for his anxiety and was not taking his prescribed psychotropic medications. The ALJ noted that Dr. Parks' "limitations regarding simple work, social interaction and the need for a structured environment were taken into consideration in formulating the residual functional capacity set out above."

The Court finds the RFC is supported by substantial evidence in the record as a whole. Opinions of examining sources are typically entitled to greater weight than non-examining sources, *see* 20 C.F.R. § 404.1527(c)(1), as are opinions that present a greater degree of supporting explanation, *id.* at § 404.1527(c)(3). These factors favor weight for the opinions of Dr. Chatain and Dr. Parks. However, greater weight is also afforded to opinions that are more consistent with the record as a whole, *id.* at § 404.1527(c)(4), and to opinions from persons with a greater understanding of disability programs and their evidentiary requirements, *id.* at § 404.1527(c)(6). These factors favor weight for Dr. Aram's opinion. In light of the evidence in the record as a whole – including Plaintiff's medical history, his reported limitation of function, his work history, and his credibility – the Court finds the ALJ did not err in discounting the opinions of Dr. Chatain and Dr. Parks to the extent they are inconsistent with Plaintiff's RFC.[8] Moreover, while Dr. Aram's opinion may have been entitled to less than "great weight" because

---

[8] The Court notes that neither Dr. Chatain nor Dr. Parks opined that Plaintiff was disabled, as suggested by Plaintiff. *See generally* SSR 96-5P, 1996 WL 374183 (July 2, 1996). Dr. Chatain stated that Plaintiff suffers in the low range of intellectual functioning and has impaired psychological functioning due to anxiety and depressive symptoms. Her report did not discuss Plaintiff's ability to work, provide any work-related limitations, or opine that Plaintiff was disabled under social security law or otherwise. A one-time assessment of a low GAF score as part of a consultative examination does not mandate an opinion that the claimant is "disabled" under social security law. *See, supra,* at n. 6. Dr. Parks opined that due to Plaintiff's psychological impairments, he is seriously limited in his ability to handle complex instructions and complex decisions; he is more than slightly limited but can function satisfactorily in his ability to make judgments on simple work-related decisions, respond appropriately to changes in routine work, and interact with others; and he has no limitations in his ability to understand, remember, and carry out simple instructions. Although the ALJ is not bound by Dr. Park's medical source statement, the ALJ, considering all evidence in the record, incorporated all of the "marked" limitations cited by Dr. Parks into Plaintiff's RFC and most of the moderate and mild limitations cited by Dr. Parks.

it was provided earlier in the application process and was a non-examining opinion, the Court cannot say the ALJ erred by relying on Dr. Aram's opinion, which the ALJ found more consistent with the record as a whole and from a person with greater understanding of disability programs and their evidentiary requirement. In sum, based on the record, the Court finds the RFC was supported by substantial evidence in the record as a whole.[9]

### 3. The ALJ committed reversible error at step five.

Finally, Plaintiff argues the ALJ erred at step five by relying on testimony from the vocational expert that conflicts with the DOT. Plaintiff argues the relevant hypothetical posed to the vocational expert, and eventually adopted as Plaintiff's RFC, required work that could be learned with a "short demonstration" of tasks; however, the vocational expert cited the ability to perform jobs of dowel inspector, final assembler, and lens inserter, all of which are classified as "SVP 2" occupations, which require more than a "short demonstration" of tasks. Defendant argues Plaintiff's reliance on the DOT is misplaced because "[n]ot all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT."

Plaintiff's argument is well-taken. The law is clear that where there is a "an 'apparent unresolved conflict' between VE testimony and the DOT, the ALJ must 'elicit a reasonable explanation for the conflict' and 'resolve the conflict by determining if the explanation given [by the expert] provides a basis for relying on the [VE] testimony rather than on the DOT information.'" *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (quoting SSR 00–4p,

---

[9] In considering the record as a whole, the ALJ discounted Plaintiff's alleged limitations from psychological impairments to the extent they were inconsistent with the RFC, based on various factors including: his failure to seek medical treatment for his anxiety from a mental health professional prior to or after his application was filed, his failure to take the prescribed anxiety medication or seek medication evaluation, the fact that Plaintiff's treating physician did not refer Plaintiff to someone for his anxiety, his failure to originally cite and/or testify regarding significant limitations arising from his psychological impairments, the fact that Plaintiff previously worked with his psychological impairments, that the record indicates Plaintiff left his prior jobs for reasons unrelated to his psychological impairments, his poor work history, his inconsistent statements throughout the application process, his daily activities, etc. Such factors are properly considered in assessing RFC. *See, supra*, at n. 5.

11

2000 WL 1898704, at *2–4 (Dec. 4, 2000)). "The ALJ is not absolved of this duty merely because the VE responds 'yes' when asked if her testimony is consistent with the DOT." *Id.* at 990. "Absent adequate rebuttal . . . VE testimony that conflicts with the DOT 'does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform.'" *Id.* (citing *Kemp v. Colvin*, 743 F.3d 630, 632 (8th Cir. 2014)).

Here, the vocational expert's testimony clearly conflicts with the DOT and requires remand. The ALJ inquired about jobs that could be performed with short demonstration only. The VE responded by citing three separate jobs that all have an SVP of 2. SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation" and an SVP level of 2 is defined as "anything *beyond short demonstration* up to and including 30 days." 20 C.F.R. § 656.3 (emphasis added); *Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010) ("At SVP level one, an occupation requires only a short demonstration, while level two covers occupations that require more than a short demonstration but not more than one month of vocational preparation."). The ALJ did not acknowledge this conflict and relied on this testimony of the VE without mentioning or resolving the apparent conflict. Accordingly, the Commissioner failed to meet its burden at step five of the sequential evaluation process. *See, e.g., Moore*, 769 F.3d at 990; *Kemp*, 743 F.3d 633; Coates v. Colvin, No. 14-0843-CV-W-ODS, 2015 WL 4610991, at *2 (W.D. Mo. July 30, 2015). Remand is required in order to resolve the conflict cited above in accordance with SSR 00–4p. *See Washington v. Astrue*, No. 12-CV-06379, 2014 WL 2135969, at *16 (N.D. Ill. May 21, 2014) (reversing and remanding for same issue).

12

## CONCLUSION

For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

Dated: September 23, 2015

                                         */s/ Douglas Harpool*
                                         **DOUGLAS HARPOOL**
                                         **UNITED STATES DISTRICT JUDGE**